on behalf of Mr. Reyes, Ms. Kathleen J. Hamill, on behalf of the two different assailant individuals. Thank you. Good morning. Good morning, Your Honor. We do have motions to cite additional authority by both parties and those motions will be granted. Thank you. You may proceed. This morning I'm here representing the defendant appellant, Zachary Reyes. Mr. Reyes was convicted of the first degree murder of Jason Ventura and then the attempt murders of Eduardo Gaetan and Jorge Ruiz. The convictions were based on evidence which supported the state's theory that Zachary was the front seat passenger in a moving vehicle which contained himself and four other young people who were affiliated with the Latin King Street gang. The shots were... I think we know the facts of the case. Okay. So why don't you move on to the issue. All right. Well, because Zachary turned 16 very shortly before the shooting and so because he was over the age of 15 and charged with first degree murder, his case was excluded from the jurisdiction of the juvenile court under section 5-130 of the juvenile court act. Consequently, he was tried as an adult and after he was found guilty of all three of these charges, he was sentenced as an adult. The court... The sentence was remarkably complicated. The court imposed mandatory minimum, I guess you would say, base prison sentences of 20 years for the murder and six years each for the two attempt murders. So 89 years in total. It was 89 years in total, but the point I did want to make about it was that every aspect of it was mandatory and minimum. For example, the firearm add-on for the murder was 25 and could have been 25 to natural life. The court exercised no discretion whatsoever in imposing these sentences. Wouldn't you say that's an exercise of discretion to impose the minimum as opposed to a medium range? Well, it is. It is an exercise of discretion up to the minimum, not below the minimum. The court believed itself to have no discretion to impose less than the minimum. And here, the reason that is significant is that the minimum is a de facto natural life sentence. And that is because, as Justice Shostak just observed, he must serve roughly 89 years of this term, which makes him 105 years old, before he can first qualify for MSR. This means that his sentence gives him no meaningful opportunity to demonstrate his maturity and rehabilitation as required under Graham v. Florida, I think it is, you know, of the United States Supreme Court's, one of the trilogy of cases upon which we rely. So the question then becomes, does an aggregate fixed term sentence equal life without parole? That's it. That's it. Because if it does, then Miller applies. We don't have to reinvent the wheel determining whether or not the Eighth Amendment is involved. It is under Miller. All we need to do is agree that this aggregate sentence composed of mandatory minimums is a natural life sentence imposed, a mandatory natural life without parole sentence. Of course, Miller didn't talk about a term of years sentence. He talked about a specific natural life sentence, correct? Yeah. In Miller, that was not before the court. However, there have been some cases, some out-of-state cases, including the one, State v. Knoll, which I cited as additional authority. And also, there is a well, the California Supreme Court decided that an aggregate was the same. It was a de facto natural life sentence for the purposes of a Graham situation. And relying upon that, several appellate courts in California have applied, have found that a de facto natural life sentence does fall under Miller. And so it should. The whole reason that the court is focusing on natural life is that they're looking at whether or not it is cruel and unusual to sentence a child whose capacities have not developed to the adult level, who has got all kinds of reasons that are age-related for doing things like this. It is cruel and unusual to sentence such a person to a hopeless sentence. Of course, there are a number of cases that go the other way out-of-state, correct? The question, it's a volatile area of law. I mean, the Henry case from Florida kind of sets it out about where do you draw the line. I mean, do you go by life expectancy in the United States? Do you go by life expectancy for a particular sex in the United States, life expectancy for someone in prison in the United States? What do you use to say a de facto life sentence? Well, I would say, fortunately, in this case, we don't have to get-the line is pretty clear. In this case, 105 years is nobody's life expectancy on this planet. I mean, if he makes it to 105 years, he's going to be in news. It's very unusual. And especially living in prison. It's-the possibilities are close to none. Your opponent relies on gay. Can you distinguish that case? Yes. Gay is-first of all, it's not a juvenile case, and for that reason, all the neuroscience and the social proof that juveniles have lower-less culpability and higher rehabilitation, at least potentials for both, really don't apply to gay. The other reason to say gay is incidents that happen. It's not all one incident. I believe it might have been 16 incidents. I think these are aggravated batteries committed while the defendant is in prison where he's attacking guard after guard or something like that. Here, we have one incident. He-in a split second, my client, if the state's evidence is correct, that he was a shooter, my client sprayed bullets out of a window of a car, and that-it was that one bang, bang, bang, that produced the three convictions. So this is-this is nowhere near that. It wasn't one act because under one act, one crime, we're talking about three different victims with three different gunshots. Yeah, no, yeah. No, that's true. So that's, you know, a question that's raised here that you may not see in some of these other out-of-state cases that maybe gay is more applicable because under gay, there are a number of different offenses that the court spoke about. And here, I mean, that's my question here. What-if this individual had only been convicted of murdering the one person, then you'd be looking at a mandatory minimum 45-year sentence. We wouldn't even be talking about this because that would be certainly within that person's life expectancy. But the person is in this predicament because he shot one person and killed that person. He shot another person, seriously wounded another person, and shot another person, attempted to murder that person. We're talking about three different victims. Well, I have two things here. One of them is that he could have gotten mandatory natural life, and we wouldn't have any discussion at all. We would absolutely applaud this if Gaytan had died as well because we have imposed mandatory natural life if you kill two people. So the fact that there's more than one killing involved actually doesn't distinguish it. The second thing is that same thing. So if he had gotten 45 years, somehow served it, and then came out and killed another person, he again would get mandatory natural life. And even though he had killed two people and committed two crimes, he still would qualify under Miller. I realize I'm having a problem because he's not going to be 16 anymore on the second one. So erase that one. But the first one, the first example that he could have killed two people in that car and that he would have had mandatory natural life under our mandatory natural life statute. Instead, he killed one and maimed the other and could have killed the third one, and therefore he gets a de facto term. But it still is natural life. What Miller is focusing on is the cruel and unusual impact of a natural life sentence on a child. And so you'd have the same argument under Miller if it was two victims and a mandatory natural life sentence, wouldn't you? Yes. So it's the same argument. Right, right. And we just wouldn't have this thing of, well, technically this one is the result of aggregates. They're mandatory consecutive and they're mandatory minimum mandatory consecutive sentences. It would be a strange line to draw to distinguish this. There were two people killed in Miller, weren't there? In Miller there was two people killed. There were two people killed? I'm pretty sure. What's your remedy here? So we agree with you and we're going to send it back to the trial court. What does the trial judge do other than violate the law and enter what's in essence a void sentence if it's in violation of the law? That is a major problem. What Miller says is that the states need to figure out how to handle this. In this case, what Miller is saying, basically, is that application of these mandatory enhancements to Mr. Reyes is unconstitutional. And so he would have to have a new sentence hearing at which the mandatory enhancements would not be applied to him. That doesn't mean that the court couldn't exercise its discretion and give him the same kind of sentence. Would consecutive still apply? Would truth in sentencing still apply? Our position must be, we're forced to take this position under Miller, that no mandatory sentencing element or whatever can apply if its effect is to create a natural life sentence without hope of parole. I know that you had requested that we hold this until the Supreme Court reaches its decision on Hufechek or on some of the other cases. Would that remedy the issue that Justice... What's your name? Berg. That's the last time I'd show up. That Justice Berg is concerned about. It would. Well, it would remedy it if the defense wins because then we would, well, we would have a, you know, I take it back. What would happen is we would remand the case for a discretionary transfer hearing. If it was found that he was properly transferred, then I suppose we still would have to address the sentence that he received to make sure the sentence complies with Miller. Let's talk about the exclusive jurisdiction statute that you're indicating is unconstitutional. You know, how do you distinguish harm? I can't distinguish harm. We are simply relying on the arguments at this point that are being presented to the Supreme Court. That court will ultimately resolve this. And it's a difficult question. It's something that, you know, Miller, we're at the very beginning of, I think, a very long process of determining what Miller means. But I think we can state with confidence that Miller means that a child who is a person, a juvenile teenager, whatever you want to call him, who was 16 years old when he committed a crime cannot be sentenced to receive a sentence which doesn't give him any hope of parole and expects him to die in prison. And that's exactly what Zachary Ray has received, and that is why we are asking for our relief. But you are requesting that we hold it to see what the Supreme Court does and maybe give us some direction on this? Yeah, I think I do ask that, yes. But if Your Honor has decided to go ahead and decide it, then I ask that Mr. Ray has at least be given the relief he's entitled to under Miller. So are you saying big picture that Miller dictates that there's no mandatory transfer, no consecutive sentences for a 16-year-old like Mr. Ray, and no mandatory minimum? Is that your big picture? Our big picture is that we can't have a sentencing scheme because what Miller says, it doesn't actually say a sentencing statute, it says a sentencing scheme which when applied, and this could be constitutional as applied or unconstitutional as applied, when applied to a 15-, 16-, 17-year-old results in a naturalized sentence. So you could have a mandatory minimum or a mandatory consecutive that doesn't result in a life without parole sentence? I think that's an open question. We, of course, will be arguing that you can't. But I think that Miller is not specific enough on that. The U.S. Supreme Court seems to be inching its way through this area. The question appears to be where does the trial court draw the line if we were to send it back, and we'd have to give the trial court some direction if we were to send it back, and where does the trial court draw the line? Does the trial court still have to impose the 20 to 60, or can the trial court say, you know, I really think a 10-year sentence with truth in sentencing applying, which would be the same as 20 years without truth in sentencing, I mean, it's kind of like a snorkel sport, the trial court can pick and choose between all these mandatory sentencing options or more mandatory. I think it is harder to be a judge in this case than it is to be anything else. I agree. We've talked about this quite a bit in my office. We are not sure what this court can do as far as giving direction, but I think the direction should be, at least at the minimum, that the court cannot be constrained by any mandatory minimum, which results in a naturalized sentence. And I don't think we can say, don't make them consecutive, but you can do the firearm add-on or something like that because that's arbitrary. The most important part of this court's order would be that the trial court must consider all of the youth-related factors that are identified in Miller and Roper and Graham when the court does this resentencing. Let's, since you have a minute, talk about arbitrary. How about the Kroon case where we're talking about, I think it was Justice Appleton's dissent, giving the juvenile court judge a substantial degree of discretion on the transfer. Would that be arbitrary? It would be less arbitrary than the mandatory. I think that the court could have a great deal of discretion, but that discretion has to include consideration of the factors that are identified in Miller and Graham and Roper, which actually kind of limit the discretion of a court. But Miller doesn't address the due process on these perspectives. No, no, Miller does not. Michael. Well, the discretion part, it's kind of funny because the Supreme Court's gone full circle then because didn't they years ago find that where there was discretion, it was unconstitutional, and that's why, was it the JS case from Illinois, said, well, no, we don't have any discretion, so this is constitutional, and now we're going around the other end of the spectrum? So it seems, yes. Thank you. All right, you will have time for a vote of aye vote. Thank you. Ms. Diaz, you may proceed. Good morning, Your Honors. Counsel may please the court. Amy Diaz on behalf of the people of the state of Illinois. As Your Honors are aware, defendant raises two issues on this appeal, the first issue being the constitutionality of the excluded jurisdiction provision and the second issue being the constitutionality of his sentence under Miller v. Alabama. On your first issue, it does appear that the Illinois Supreme Court is going to address that in the three cases that it's taken. There's been a request to hold this case in advance. Do you have any objection to that? I do have an objection. All right, what's your objection? Miller, well, defendant argues that this should be revisited, even though it's the law in the state right now, that the excluded jurisdiction provision is constitutional. Defendant argues that that should be revisited in the wake of Miller. However, in Miller, the majority addressed the issue of discretionary transfers and said that discretionary transfers have limited utility, that the discretion needs to be at sentencing because at the point where a judge is making the determination of whether to transfer a juvenile to adult court, he doesn't have the amount of information that the judge at sentencing would have and that that's what's important. The discretion is crucial at sentencing, and discretion during the transfer is very limited. It has limited utility is what I'm trying to say. That's the issue that the appellate courts have. That's exactly the holding of the appellate courts in Jenkins and Patterson and Pacheco, but the Supreme Court has taken all three of those cases, maybe in light of the dissent from Justice Appleton, I don't know, but the Supreme Court is going to be looking at these issues. Yes, the Supreme Court. So you're betting that they're going to go the way of the majority of those cases. I'm hoping that they will go the way of the majority of those cases, especially— So what's the harm with us waiting until we get word as to how the Supreme Court is going to rule? I don't have a formal objection. I guess I would have to rephrase that. I don't have a formal objection. I don't think there's a need to wait because I do hope and presume that they will go the way of the majority, but if Your Honors think that it's best to hold it in abeyance until the Supreme Court decides, I think it's Patterson and I forgot the other cases. I think there are other cases that are up on appeal that are going to deal with this particular issue. Doesn't this fall under Miller where someone's going to be in prison until they're 105 years old? The people believe that it absolutely does not because a defendant argues that the effect of the firearm statutes, the mandatory consecutive sentences, and the truth in sentencing statutes converge to create a sentence that is in violation of Miller. Miller addressed two cases in which two 14-year-olds, while charged with multiple crimes, were only sentenced for one crime. One 14-year-old was sentenced for capital murder and the other 14-year-old was sentenced for committing murder in the course of arson or for murdering somebody while committing arson. And both those defendants received mandatory natural life in prison. And the trilogy of cases that address or that have culminated in the Miller decision all address natural life in prison. How is 87 years or a defendant getting out of prison at 105 years old not natural life? It is what defendants have termed de facto life, but it is not natural life. What defendant in this case received was an aggregation. I mean, he received... It's an aggregate sentence. It was an aggregate sentence because of the multiple crimes he received. As Justice Burke said earlier, we wouldn't be here, I believe it was Justice Burke, if he had shot and killed one person. But colloquially speaking, we shouldn't be giving defendants freebies just because their sentences may or may not exceed their life expectancy. And where would we draw the line? Well, giving defendants that type of sentence and giving a juvenile that type of sentence, haven't some of the courts addressed the issues with respect to juveniles and their mental capability at that time, their decision-making? Would you not put any weight on that? I think judge... Well, it's not what I personally think judges must have discretion under Miller to take into account a juvenile's youth and attendant circumstances before imposing natural life. But Miller did not categorically bar that type of sentence, nor did it bar a lengthy term of years. It didn't even address a lengthy term of years. So as much as a defendant would like to categorize this as life in prison without parole, this is a lengthy term of years because of the confluence of the statutes that mandatorily applied to him, but it is not natural life as contemplated by Miller or Graham or Roper. None of those cases involved a lengthy term of years or an aggregation of crimes which resulted in a confluence of sentences which led to a lengthy term of years. We had one of the victims in this case that was seriously injured, correct? Correct. And that died. Would this defendant have been better off if that person had died? No. Why not? Because defendant would have received instead of the 20-year firearm add-on, he would have received the 25, so the minimum for that would have been 45, and they would have all been consecutive. Well, if he murdered two individuals, wouldn't it be a mandatory natural life? Well, not anymore. The judge would have. So what I'm saying is if, in fact, he murders two people and he can get this hearing where he could get a lesser sentence or at least present evidence to show why he should get a lesser sentence. Correct. But one person fortuitously lives. Correct. And he's getting out when he's 105, whereas if that person had died, depending on what the judge decided, but the judge would have had some more discretion to determine a lesser sentence. I mean, what sense does that make that you're better off if two people die as opposed to one? I think it's too speculative to say that he would have been better off because the judge did exercise discretion because the 25-year add-on that the defendant received for the firearm enhancement for the murder conviction, the judge could have sentenced him to life because of that. So as Justice Spence said earlier, the judge did exercise discretion. The defendant could have received life. So I think it's too speculative to say that had a second victim died, then the defendant possibly could have received a lesser sentence. It's possible, but I don't know that it's probable. Had he killed two people, I don't think he would have received less than 97 years. You seemed to argue in your brief about the discretion and the fact that the trial judge actually had discretion to violate the law and find the law unconstitutional, and that by not finding the law unconstitutional, that was an act of discretion. Well, I was citing to the Peeble v. Miller case, the Leon Miller case, in which the trial judge found 100 years for an accountability defendant to be unconscionable. And, of course, legislative mandates, or, of course, the Eighth Amendment trumps legislative mandates, and I'm going to presume that every judge knows that. So I am of the belief that if the judge had found this sentence to be unconscionable, he could have reduced it and asked the Illinois Supreme Court, or whoever appealed could have asked the Illinois Supreme Court to exercise its supervisory authority to either affirm or reverse, as it did in Leon Miller. Was that the kind of discretion that is talked about in the U.S. Supreme Court Miller case? No. I think Leon Miller was a very rare case, and by citing to it in my brief, I was not, the people are not encouraging that judges violate or disregard legislative mandates and impose whatever sentences they deem fit, which brings me to my biggest concern with this issue. I don't understand where the line is drawn. I understand that in the defendant's request for a remedy, defendant asks that this court remand the case and allow the sentencing judge to have discretion as to whether or not, or he should impose the firearm add-ons, which are mandatory. The mandatory consecutive terms and, so it was the firearm add-ons. Oh, and the truth in sentencing, the mandatory truth in sentencing provision. That seems a little arbitrary to me. Why draw the line there? I mean, I just don't understand where that request came from. And to send this back for resentencing would essentially be a directive for the trial court to disregard legislative mandates in a case where defendant has failed to prove that any of these statutes are unconstitutional or that his sentence is unconstitutional under Miller. It would be a void sentence. It would be a void sentence. So it is the people's belief that defendant has not met the burden of proving that any of these statutes are unconstitutional or that his sentence is in violation of Miller. So it's problematic, in our opinion, that this would be sent back essentially with a directive. Perhaps the Supreme Court might give us some guidance on this issue, too. Perhaps. Perhaps it would be a good idea to wait. That's obviously up to Your Honor. But, so... I think everybody would agree that to send it back creates a lot of problems. I mean, a lot of issues that we just don't know the answer to. But the Supreme Court in Miller sent a mandatory natural life case back to that court, so U.S. Supreme Court... Right. So the judge there would have had to violate the law, too, under resentence, right? Right, but I think legislative... I have not checked to see whether legislative action was taken in Arkansas and Alabama, which were the two states involved in Miller, but I presume that that was going to be the next step. I don't know about those states, but I know some states, in light of these cases, have lost the parole possibility. They kept all the mandatory sentencing in place, but then they put in some parole provision after... I think California. Yeah, I know California did. But I... As of right now, the bottom line is I... Defendant has not shown that these statutes are unconstitutional, and just because they converge to create what defendant has termed a de facto life sentence, that is not what Miller was about. Miller was about natural life in prison without parole. And the other issue is the request. Like I said, the request for the remedy. It's just... It seems like an untenable thing to do at this point. And notwithstanding whatever California does, for whatever reason they presume to do so, there are other jurisdictions which have found that Miller does not apply to lengthy, aggregate sentences in homicide or non-homicide cases. Correct? Right. And Bunch versus... There's the sixth Bunch, the Sixth Circuit case. There's a case or two out of Florida. And realizing those are not, you know, certainly binding authority. Right. The states are split. And Bunch versus Smith, it's a good case, but the judge there sentenced the defendant to the maximum. But he exercised his discretion in sentencing the defendant to the maximum. And cert was denied in that case. And I think that that indicates that the U.S. Supreme Court is not at the point where it is ready to expand Miller. And I think an expansion of Miller in the way that defendant envisions it is impermissible at this juncture. And you relied in your brief solely on the gay opinion. Has the public defender distinguished that case? Do you now agree that that case really is not on point for what we're talking about here? I think it's on point for the proposition that aggregate sentences are not. I'm sorry. May I refer to my brief? The only reason I cited that case was in support of the proposition that it is not an accumulation of sentences that equals life without parole. It is a sentence that is tied to a single conviction. And that's on page 7 of my brief. Yeah, but that's a little different. That's an aggregate on repeated offenses. Correct? Right. I mean, it's like one offense this year, two years later another offense, three years later another. That's not what we have here. That's not what we have here. And we don't have a mentally ill patient here. Right, I understand that as a big distinction. However, we do have a defendant who committed multiple offenses. At the same time? It was at the same time, but it wasn't one act. He shot three people. So I don't think that the span of time or the difference in time between the accumulation of the offenses in gay and the offenses in the instant case, I don't think that that is a pertinent distinguishing factor. I think the fact that it didn't involve a juvenile, I think that that's important. But the reason I cited to that case was solely to support the proposition that it is not an accumulation of sentences. That equals life in prison without parole. Well, if this defendant would continue to behave badly and the sentences accumulate, it would be a totally different issue than what we're talking about now, wouldn't it? If the defendant continued to behave badly? Correct. And sentences are just tacked on for his next violation, his next violation, and his next violation. We would be talking, that's a totally different set of circumstances than what we have here. Isn't that correct? Yeah, that's correct. And isn't that what we have in gay? Let's see. I don't recall at this moment, but I see a sentence here on the bottom of page 7 of my brief where it says, it's a direct quote from Gay. Even a lengthy sentence for a specific term of years is treated differently from life without parole. And that's really where I was trying to go when I cited to that case. Thank you. If there are no further questions, we would ask that this court affirm the judgment of the trial court. Thank you, counsel. Thank you. Ms. Hamm, what about lawyer? One of the distinguishing things between this case and a lot of the cases from out of state where they're finding the aggregate is not the same. It's the natural life. It said here, there is truly no exercise of discretion whatsoever insofar as getting to the 97 years. Every aspect of this sentence is mandatory. And so we have mandatory 97 years. And it justifies reason to say that because it isn't called natural life, instead it's called 97 years, added on to a 16-year-old, which of course is 105 years, that that isn't natural life. And that all of the considerations which led the Miller court to find that a mandatory natural life sentence is cruel and unusual when imposed on a 16-year-old wouldn't apply to the circumstance. The other comment I just wanted to make was, and I'm sure your honors are already aware of this, in Miller v. Alabama, the little discussion that they have about automatic transfer takes place in the context of the court addressing the state's argument that because both of the cases in Miller, those cases were discretionary transfers to the adult system. And the state argued, well, we've already considered these factors when the state decided to transfer the case. And so it's redundant to have to look at it in the context of sentencing as well. And then what the Supreme Court said was, at the transfer level, you don't get to look at as many, as much about the, you don't know as much. You don't know as much about the, you know, what the evidence for the, you know, the crime is going to be. You don't know as much about the defendant. Usually more stuff comes out during the trial, so there's more information. So that's why they were saying that the fact that there was discretionary transfer in those two cases did not, was not a reason for the state to win Miller. The Supreme Court did not intimate in any way, shape, or form that those excluded jurisdiction statutes were unconstitutional. No, they didn't. The discussion simply in that case is, that particular discussion is not really relevant. In our argument that the excluded jurisdiction statutes are unconstitutional, we're saying it's the deep principles on which the entire case, and all three of them, are founded. The recognition that children are less culpable and have greater rehabilitation, that those considerations require at least a discretionary hearing. That's all. That's all I have to say. I thank you. I ask you to give us a sentencing request and also to find the excluded jurisdiction statute unconstitutional. I would like to thank both attorneys for their arguments today. This will be taken under advisement and we'll take a short recess.